IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM KEEFE, BRADLEY J. SCHMITZ,
MALIA LAPORTA, P.S., M.S., MICHAEL O'GRADY,
I.O., A.O., and M.O.,

                Plaintiffs,

  v.

SCOTT WALKER, BRAD SCHIMEL, MARQUETTE
COUNTY CHILD SUPPORT IV-D AGENCY,
PAM UNGER, BERNARD N. BULT,
JOSEPH R. KONRATH, CHAD HENDEE,
MARQUETTE COUNTY SHERIFF DEPARTMENTS,
JOANNE KLOPPENBURG, JOSEPH RUF III,
ALAN J. WHITE, SUSAN K. RAIMER, COLUMBIA
COUNTY CHILD SUPPORT IV-D AGENCY,
MARATHON COUNTY CHILD SUPPORT IV-D
AGENCY, SCOTT CORBETT,
TAMMY LEVIT-JONES, and TIMOTHY C. HENNEY,

                Defendants.

OPINION & ORDER

17-cv-177-jdp

---

Pro se plaintiffs William Keefe, Bradley Schmitz, Malia LaPorta, and Michael O'Grady have jointly filed this lawsuit on behalf of themselves and their children, in which they allege that they have been injured by various state of Wisconsin and county officials' enforcement of child- and spousal-support laws enacted under Title IV–D of the Social Security Act, 42 U.S.C. § 651, *et seq.* I must screen the complaint under 28 U.S.C. § 1915A because Schmitz was a prisoner at the time plaintiffs filed the complaint. But I would have screened the complaint anyway before ordering service upon defendants under the court's inherent authority to manage its cases. *See Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) ("district courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status."). Many of plaintiffs' claims are implausible or barred. Although

plaintiffs' bring some claims that might properly be brought in this court, none of them give the four plaintiffs a basis to bring the lawsuit together. I will give plaintiffs a chance to explain whether they would like to bring their claims in separate lawsuits.

The core of plaintiffs' claims is that they have been unfairly treated by Wisconsin family and criminal courts as the result of a conspiracy involving Wisconsin counties' administration of the state's child-support enforcement program, which is partly funded by federal funds. Plaintiffs do not name federal officials as defendants, but they do name state officials, county child support agencies, county corporation counsels, clerks of court, and state court judges.

Plaintiff Schmitz says that he was wrongfully convicted of several counts of failing to pay child support based on false allegations by child-support agency staff, and that he was ultimately convicted in proceedings conducted by defendant Marquette Circuit Court judge Bernard Bult, even though Bult had previously worked on his child-support cases as director of the child-support agency, corporation counsel, and court commissioner. Schmitz says that he was "locked . . . in county jail solitary confinement cell subjecting him to psychological torture and manipulation until he accepted prosecutors proposed agreement to be found guilty." Dkt. 1, at 14. Bult also evicted Schmitz, plaintiff LaPorta, and their children in what they call a "fraudulent scheme to perpetrate land theft."[1] Over the course of the proceedings, the children's confidential information was publically released by child-support staff.

Plaintiff O'Grady says that he won a child-support case in Columbia County in 1998 but it was then refiled in violation of the principle of claim preclusion and he was forced to pay child support based on false allegations. O'Grady's children's confidential information was also

---

[1] Plaintiffs say that Schmitz and LaPorta are "common law" spouses.

publically released by county child-support staff. O'Grady has unfairly been branded as a frivolous litigator and has been barred from pursuing relief in state courts.

There are multiple problems with most of plaintiffs' proposed claims. First, they want me to undo rulings in various state-court family, criminal, and civil proceedings, but this court cannot grant them that relief. They are barred from challenging adverse state-court judgments in this court by the *Rooker–Feldman* doctrine, which "essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims that are 'inextricably intertwined' with state court determinations." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983)). The doctrine "is based upon recognition of the fact that inferior federal courts generally do not have the power to exercise appellate review over state court decisions." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). Plaintiffs' recourse for what they believe are incorrectly decided state-court cases is (or was) in the state appellate system, not in a federal district court, which has no authority to overturn a judgment issued by the state court. They may find that their chance to appeal is gone, but that is not a reason to allow their claims in this court.

Second, plaintiffs may not bring claims on behalf of their minor children. *See Bullock v. Dioguardi*, 847 F. Supp. 553, 560 (N.D. Ill. 1993) ("A parent may sue on behalf of his or her minor child as a next friend if the parent is represented by counsel and has no interests that conflict with those of the child."). So unless plaintiffs retain counsel, they will not be able to bring claims on behalf of the children they have named as co-plaintiffs in the case.

Third, it is unclear why plaintiff Keefe is part of this lawsuit at all. Keefe says that he, Schmitz, and LaPorta are members of the Jehovah's Witnesses and that they have all been

discriminated against because of their faith, but unlike the other plaintiffs, he does not allege that his rights were violated in child-support proceedings. He does not explain how any discrimination against him and the other plaintiffs is connected. Keefe attached to his complaint a copy of his book, *Attacked By An Army of Legal, Judicial and Political Goliaths*, but I am not going to consider a book as a supplement to the complaint; Keefe needed to place all of his allegations in the complaint itself. The details he does provide, discussing misconduct by his former lawyers, who were subjected to Wisconsin disciplinary proceedings and federal criminal charges, seem to have nothing to do with the other plaintiffs' allegations.

Perhaps the largest problem for the lawsuit as it is currently structured us that the individual plaintiffs' claims (other than those of spouses Schmitz and LaPorta) do not belong in the same lawsuit. Under Federal Rule of Civil Procedure 20, plaintiffs may join their claims together in one lawsuit if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A).

Plaintiffs attempt to tie their cases together by alleging that their mistreatment by the state courts was the result of a conspiracy among state and county officials running the state's child-support enforcement system:

> Plaintiffs assert the state administered federally funded child support Title IV-D program is unconstitutional on several grounds and is now allegedly operating as a continuing criminal racketeering enterprise within the meaning of 18 U.S.C. Sections 1961-1968 and Wisconsin's Organized Crime Control Act.
>
> . . .
>
> Defendants acted depriving Plaintiffs of federally protected Right to Equal protection and benefit of law and due process right before a fair and impartial court pursuant to a meeting of the minds and a structural bias in the state court system constituting

4

the existence of a alleged conspiracy involving state action under a "Code of Silence" for malicious prosecution of child support enforcement claims that deprived Plaintiffs of civil rights in furtherance of the conspiracy . . . .

Dkt. 1, at 12.

But plaintiffs come nowhere close to stating a plausible violation of RICO or the analogous Wisconsin statute.[2] The necessary elements of a RICO claim under 18 U.S.C. § 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (quotation omitted). Section 1962(d) makes it unlawful "for any person to conspire to violate the provisions of subsection . . . (c)." To satisfy the enterprise element, plaintiff must allege an enterprise, which is "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) (citations omitted). Plaintiffs conclusorily allege that the various county and state parties named as defendants conspired in an enterprise. They are all part of the child-support-enforcement machinery in Wisconsin, but that does not mean they intentionally conspired against these individual plaintiffs in their respective court proceedings. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (RICO "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs."); *Limestone Develop. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) ("RICO cases, like antitrust cases, are 'big' cases and the defendant should not be put to the expense of big-case discovery on the basis of a

---

[2] The Wisconsin legislature based the Wisconsin Organized Crime Control Act on RICO, and case law interpreting RICO is persuasive authority with respect to the interpretation of the Wisconsin law. *State v. Judd*, 147 Wis. 2d 398, 401, 433 N.W.2d 260 (1988).

threadbare claim."). Basically, their allegations boil down to saying that "child-support enforcement in Wisconsin is a racket." But all they have to support this theory are their losses in unrelated state-court proceedings. These threadbare allegations are not enough to support RICO or similar Wisconsin-law claims, and without those claims, plaintiffs cannot combine their other claims into one suit.

From plaintiffs' relatively vague allegations, I cannot say that the complaint is completely devoid of potentially viable claims. In particular, it is possible that Schmitz could bring claims about his mistreatment in jail or that Schmitz, LaPorta, and O'Grady could bring claims regarding the release of their children's confidential information if they were represented by counsel. But they cannot bring their claims together in one lawsuit. Schmitz and LaPorta would have to bring their claims in one lawsuit, O'Grady would have to bring his claims in a second lawsuit, and Keefe (if he were to amend his allegations) would have to bring his claims in a third lawsuit.

I will dismiss plaintiffs' complaint under Rule 20 and direct plaintiffs to respond to this order explaining whether any of them wish to continue with their own claims in a separate lawsuit. If any of them choose that route, they will have to submit a brand-new complaint containing only their own claims, making sure that they explain how each named defendant violated their rights. It is not enough to make conclusory statements about a conspiracy. They should draft their amended complaint as if they were telling a story to someone who knew nothing about the events at hand. They will also have to explain to the court which of them paid the $400 filing fee so that I can apply that fee toward their amended complaint.

ORDER

IT IS ORDERED that:

1. Plaintiffs' complaint is DISMISSED under Federal Rule of Civil Procedure 20.

2. Plaintiffs may have until April 18, 2018, to respond to this order as directed in the opinion above.

Entered March 29, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge